# IN THE UNITED STATES DISTRICT COURT FORTHE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**ENRIQUE L. GONZALEZ,**

   **Petitioner,**

**v.**          **Case No.  4:14cv518-MW/CAS**

**JULIE L. JONES, Secretary,**
**Department of Corrections,[1]**

   **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On October 2, 2014, Petitioner, proceeding pro se, under the mailbox rule, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court, Middle District of Florida.  ECF No. 1. The petition was transferred to the Northern District by order entered October 7, 2014.  ECF No. 2.  Pursuant to an order to amend, ECF No. 7, Petitioner filed his amended petition under the mailbox rule, with exhibits, on November 17, 2014.  ECF No. 8.  Respondent filed an answer, with

---

[1] The Clerk of Court shall substitute Julie L. Jones, as Secretary of the Florida Department of Corrections, for Michael D. Crews.  Julie L. Jones became Secretary on January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

exhibits, on April 16, 2015.  ECF No. 18.  Petitioner filed a reply on May 15, 2015.  ECF No. 20.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this amended § 2254 petition should be denied.

## Facts and Procedural History

Petitioner is serving a life sentence in the custody of the Florida Department of Corrections.  ECF No. 8 at 16; Ex. A.[2]  Petitioner's claims arose from a disciplinary report issued on November 20, 2012, charging him with lewd and lascivious exhibition in the presence of a staff member or visitor in violation of Rule 33-601.314(1-6), Florida Administrative Code.

---

[2] Hereinafter, all citations to the state court record, indicated by "Ex. –," refer to the exhibits submitted with Respondents answer, ECF No. 18, unless otherwise indicated.

Ex. B at 1.  A disciplinary hearing was held on November 27, 2012, at

which Petitioner entered a plea of not guilty.  Ex. B at 13.

The decision of the hearing team found Petitioner guilty and provided

a statement of the evidence supporting the finding as follows:

> The hearing team finds inmate Gonzalez, Enrique-DC# 186274,
> guilty based on all facts derived from the disciplinary
> investigative report, witness statements and Ofc. T.
> Weatherspoon's statement in section one of the disciplinary
> report wherein it indicated, "On November 20, 2012 I was
> assigned as H-Dormitory housing officer.  At approximately
> 1750 hours, while I was inside the officer's station, I observed
> inmate Gonzalez, Enrique DC# 186274, H3-212U,laying on his
> back on his bunk with his pants below his waistline and his richt
> hand stroking his exposed penis while staring directly at me."
> All witness statements were read and considered.  A DC6-151
> documentary or physical evidence disposition form is attached.
> Inmate advised he has fifteen days from today's date to appeal
> the team's decision.

Ex. B at 13 (misspelling in original).  The Disciplinary Report Hearing

Information also stated that Petitioner was present at the hearing and

declined staff assistance that was offered.  The only discipline imposed

was 60 days of disciplinary confinement.  Ex. B at 13.

On December 7, 2012, Petitioner submitted a Request for

Administrative Remedy or Appeal to the warden of the correctional

institution regarding the disciplinary action.  Ex. C at 1.  The appeal alleged

that a violation of due process had occurred because in the body of the

statement of facts the complaining officer, T. Weatherspoon, did not identify

herself by name and misspelled the word "right" as "richt" when describing

the hand he was alleged to have used to stroke his penis.  Ex. C at 1.

Petitioner contended this violated Rule 33-601.304(2)(g), Florida

Administrative Code.  The warden's response was provided on December

21, 2012, stating:

> Your request for Administrative Remedy or Appeal was received, reviewed and evaluated.

> You received a Disciplinary Report due to your behavior and actions.  At no time were you denied due process in the process of your disciplinary report.

> According to Chapter 33, Officer Weatherspoon does not have to identify herself in Section I of the disciplinary report.  All the information that is required by Chapter 33 and Policy and Procedures was provided in Section I.  A typo in disciplinary reports does not warrant the rejection or overturning of disciplinary reports.

> Therefore, based on the above information your request for Administrative Remedy or Appeal is denied.

> You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by Chapter 33-103.007(3)(a) and (b), and forwarding your complaint to the Florida Department of Corrections 501 South Calhoun St. Tallahassee, FL 32399.

Ex. C at 2.

Also on December 7, 2012, Petitioner submitted a separate request

for administrative remedy or appeal in which he claimed that the

disciplinary team failed to "grant additional witnesses and evidence that was requested at team hearing by Inmate Gonzalez, failure to interview these witnesses and seek evidence that had information pertaining to the infraction."  Ex. C at 5.  The administrative appeal also alleged that Petitioner was wearing dark gym shorts and not blue uniform pants at the time of the alleged incident, and that his request for additional witnesses and evidence was denied and never noted on the report worksheet.  Ex. C at 5.  This administrative appeal was denied on December 21, 2012, by a response stating:

> Your request for Administrative Remedy or Appeal was received, reviewed and evaluated.
>
> It does not matter if you were wearing blue pants or blue shorts, in Section I of the disciplinary report, it states you had your pants down, which can mean blue pants, blue shorts or boxers, the important part of the report states that you were laying on your back, stroking your erect penis while staring directly at her.
>
> You were given a fair and impartial disciplinary hearing and the team members based their findings on Section I of the disciplinary report and the investigation of the disciplinary report.
>
> Therefore based on the above information your request for Administrative Remedy or Appeal is denied.

Ex. C at 6.  The response also reiterated the procedure to follow to obtain additional review.

Petitioner submitted another Request for Administrative Remedy or Appeal dated January 4, 2013, alleging that the statement of facts in the disciplinary report incorrectly stated that he was stroking his penis with his "richt" hand, which is not a word, and again noting that the officer who wrote the statement of facts did not identify herself in the body of the statement.  Ex. C at 3.  A representative of the Secretary of the Department provided a response on January 17, 2013, stating:

> Your administrative appeal has been reviewed and evaluated. The response that you received at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level.
> It is obvious in the Statement of Facts that right should be right.
> Your administrative appeal is denied.

Ex. C at 4.

Petitioner submitted a second Request for Administrative Remedy or Appeal to the Secretary of the Department of Corrections dated January 4, 2013, in which he reiterated his earlier claims and claimed in addition that he had made a request at the disciplinary hearing for additional witnesses and evidence.  Ex. C at 7.  He alleged that the "Team Hearing Officers" never noted or explained on the disciplinary report worksheet why the request was not granted.  Ex. C at 7.  On February 6, 2013, a

representative of the Secretary of the Department of Corrections provided

the following response:

> Your administrative appeal has been reviewed and evaluated.
> The response that you received at the institutional level has
> been reviewed and is found to appropriately address the
> concerns that you raised at the institutional level as well as the
> Central Office level.
>
> Furthermore, the institution was contacted and the DR team
> advised that you did not request any witnesses/evidence during
> the hearing.
>
> Your administrative appeal is denied.

Ex. C at 8.

Petitioner filed a petition for writ of mandamus in the circuit court of

the Second Judicial Circuit of Florida on February 25, 2013.[3]  Ex. D at 1.

The court ordered a response from the Florida Department of Corrections,

Ex. D at 15, and a response was filed on or about June 4, 2013.  Ex. D at

22-43.  Prior to the filing of the response, a letter was provided to Petitioner

on May 17, 2013, from the Office of the Attorney General of the State of

Florida informing Petitioner that under Florida law, a life-sentenced prisoner

subjected only to disciplinary confinement and forfeiting no gain time, lacks

the requisite liberty interest to challenge a disciplinary report.  Ex. D at 18

---

[3] Mandamus is the accepted remedy for circuit court review of prison disciplinary
decisions where immediate release is not a possible result.  Bush v. State, 945 So. 2d
1207, 1210 (Fla. 2006).

Case No. 4:14cv518-MW/CAS

(citing <u>Williams v. Tucker</u>, 87 So. 3d 1270 (Fla. 1st DCA 2012), and <u>Wright v. McDonough</u>, 958 So. 2d 1132 (Fla. 1st DCA 2007)).

On July 18, 2013, the circuit court dismissed the petition for writ of mandamus, concluding that Petitioner, a prisoner ineligible to earn gain time due to his life sentence, failed to demonstrate a protected liberty or property interest arising from the disciplinary confinement imposed in this case. Ex. D at 73-74. The circuit court found that Petitioner was assigned a total of 60 days in disciplinary confinement and forfeited no gain time. Ex. D at 72.

Petitioner sought further review by filing a petition for writ of certiorari in the state First District Court of Appeal on August 28, 2013, Ex. D at 1, which was denied on the merits on May 6, 2014.[4] Ex. E at 13. *See* <u>Gonzalez v. State</u>, 138 So. 3d 441 (Fla. 1st DCA 2014) (table). The mandate was issued on June 3, 2014. Ex. E at 12.

Petitioner filed his amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court on November 17, 2014, raising the following grounds for relief:

(1) Respondent failed to follow its own clearly established rules, thus creating a defective disciplinary report resulting in restrictive disciplinary confinement, which implicated a liberty

---

[4] The petition does not appear in the state court record.

interest and violated Petitioner's right to due process.  ECF No.
8 at 5-6.

(2) Due process was violated by Respondent's failure to
investigate the incident or obtain video or witness statements.
ECF No. 8 and 8-9.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

The Supreme Court has explained that "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable."

Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court stated:

Case No. 4:14cv518-MW/CAS

> As amended by AEDPA, § 2254(d) stops short of imposing a
> complete bar on federal-court relitigation of claims already
> rejected in state proceedings. . . .  It preserves authority to
> issue the writ in cases where there is no possibility fairminded
> jurists could disagree that the state court's decision conflicts
> with this Court's precedents.  It goes no further.  Section
> 2254(d) reflects the view that habeas corpus is a "guard against
> extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal.
> *Jackson v. Virginia,* 443 U.S. 307, 332, n.5 (1979) (Stevens, J.,
> concurring in judgment).  As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).

The Eleventh Circuit more recently reiterated the guiding principle

that federal habeas review is intended to be a " 'guard against extreme

malfunctions in the state criminal justice systems,' not a substitute for

ordinary error correction through appeal." Wilson v. Warden, Ga.

Diagnostic Prison, 834 F.3d 1227, 1238 (11th Cir. 2016) (en banc) (quoting

Richter, 562 U.S. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332

n.5 (1979))).  The federal court employs a " 'highly deferential standard for

evaluating state-court rulings, which demands that state-court decisions be

given the benefit of the doubt.' "  Cullen, 563 U.S. at 181 (quoting Richter,

562 U.S. at 102, and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Secretary, Florida Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim. Duncan v. Henry, 513 U.S. 364, 365-66 (1995); *see also* O'Sullivan, 526 U.S. at 845; Picard v. Connor, 404 U.S. 270, 277-78 (1971).

Where the claim challenges disciplinary proceedings brought by an inmate held in state custody, in order to exhaust state remedies, the inmate must file the required administrative appeal and appeal the result of that proceeding to the Office of the Secretary of the Department of Corrections. *See* Hoever v. Fla. Dep't of Corr., 156 So. 3d 543, 544 (Fla. 1st DCA

2015).  Circuit court review is then by petition for writ of mandamus, <u>Bush v. State</u>, 945 So. 2d 1207, 1210 (Fla. 2006), and any further review in the state district court of appeal is sought by petition for writ of certiorari. <u>Sheley v. Fla. Parole Comm'n</u>, 703 So. 2d 1202, 1204 (Fla. 1st DCA 1997), <u>approved</u> 720 So. 2d 216, 216 (Fla. 1998).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  <u>Cullen</u>, 563 U.S. at 181. Further, a federal court must presume the correctness of the state court's factual findings.  *See* 28 U.S.C. § 2254(e)(1).

## Ground 1: Due Process Claim of Errors in Disciplinary Proceeding

Petitioner contends in this ground that a deprivation of due process occurred because the correctional institution failed to follow its own rules set forth in Rules 33-601.304(2)(g) and 33-601.305, Florida Administrative Code, regarding disciplinary reports and proceedings.  ECF No. 8 at 5.  He contends his liberty interest stems from the fact that although he is serving a life sentence, he is eligible for parole consideration and the disciplinary infractions can adversely affect his presumptive parole release date decision by the Parole Commission, now referred to as the Florida Commission on Offender Review.  ECF No. 20 at 1-2.  It is appropriate to first address the question of whether this claim is moot.

Case No. 4:14cv518-MW/CAS

A.  Mootness

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969).  "Put another way, "[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.' " Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1217 (11th Cir. 2000).  Whether the case presents a live case or controversy implicates the Court's constitutional jurisdiction.  *See* U.S. Const. art. III, § 2, cl. 1.

In 2012, Petitioner was ordered to serve 60 days in disciplinary confinement.  The state court record does not indicate when Petitioner served the 60 days of disciplinary confinement, but nothing in the record indicates that he has not served that confinement.  He filed this federal habeas action more than three months after the last action in state court challenging his discipline—the issuance of the mandate in the district court of appeal.  Therefore, Petitioner's challenge to the disciplinary confinement is moot.  *See* Medberry v. Crosby, 351 F.3d 1049, 1053-54 (11th Cir. 2003) (holding that petition challenging disciplinary proceeding is moot if the proceeding will not affect the length of confinement and the prisoner has

served the imposed discipline); *see also* <u>Medberry v. Crosby</u>, 135 F. App'x

333, 334 (11th Cir. 2005) (not selected for publication) (holding inmate's

claim not subject to the "capable-of-repetition but evading review"

exception to mootness); <u>Matthews v. Crews</u>, No. 4:12cv237/WS/CAS, 2014

WL 3908153 (N.D. Aug. 11, 2014) (adopting Report and Recommendation

to Dismiss § 2254 Petition as Moot) (not reported).

Petitioner's contention that the disciplinary infraction will delay his

release on parole, or adversely affect the decision to set a presumptive

release date, does not remove the mootness impediment.  Florida's parole

system creates no constitutional right to release on parole.  *See* <u>Jonas v.</u>

<u>Wainwright</u>, 779 F.2d 1576, 1577 (11th Cir. 1986); <u>Hunter v. Fla. Parole &</u>

<u>Probation Comm'n</u>, 674 F.2d 847, 848 (11th Cir. 1982).  Petitioner is

sentenced to life and the extension of a presumptive parole release date

does not lengthen that sentence.  He does not have a legitimate

expectation of liberty or right to expect release on a certain date even if he

had been given a presumptive parole release date.  *See* <u>Tooma v. David</u>,

381 F. App'x 977, 979 (11th Cir. 2010) (not selected for publication).

Moreover, any effect of the disciplinary action on Petitioner's presumptive

release date or future parole prospects is too speculative to satisfy the "live case or controversy" requirement of Article III.[5]

The record does not indicate that Petitioner has not completed his time in disciplinary confinement and nothing in the record suggests the disciplinary proceeding affected the length of his life sentence.  Therefore, there is no case or controversy to litigate in this petition.

B. Absence of a Constitutionally Cognizable Liberty Interest

Respondent contends that the claim is not cognizable in this proceeding because Petitioner was given only 60 days in disciplinary confinement and lost no gain time, thus no constitutional deprivation or injury to a liberty or property interest has been shown.[6]  ECF No. 18 at 6. The Supreme Court has recognized only two instance in which a prisoner may claim a constitutionally protected liberty interest which implicates due process concerns: (1) when actions of the prison officials have the effect of altering the duration of the inmate's imprisonment; and (2) where a prison restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472,

---

[5] *See also* Sandin v. Conner, 515 U.S. 472, 487 (1995) (holding that the chance that a finding of misconduct will alter the decision to release on parole is too attenuated to invoke the procedural guarantees of the Due Process Clause.

[6] This response also pertained to Petitioner's Ground 2, and was not repeated in the Respondent's answer as a separate ground.

486-87 (1995); *see also* Rogers v. Singletary, 142 F.3d 1252, 1253, n.1 (11th Cir. 1998).

Absent either loss of gain time credits that has the effect of altering the duration of the sentence or "atypical" and significant hardship, the Due Process Clause affords no protected liberty interest that invokes procedural protections. *Id.* at 487. The Court in Sandin noted that inmates in the general population experienced "significant amounts of 'lockdown time'" and that the degree of confinement in disciplinary segregation was not excessive. *Id.* at 486. The Court in Sandin also noted that disciplinary confinement for 30 days did not present a dramatic departure from the basic conditions of the inmate's sentence. *Id.* at 485. *See also* Rodgers, 142 F.3d at 1253 (concluding that two months of administrative confinement did not constitute deprivation of a protected liberty interest); Shaarbay v. Palm Beach Cnty. Jail, 350 F. App'x 359, 361-62 (11th Cir. 2009) (not selected for publication) (finding petitioner failed to show that placement in disciplinary confinement for 30 days was either "atypical" or a significant hardship); Hartley v. McNeil, No. 5:07cv101-RS/EMT, 2008 WL 1844416, at *3 (N.D. Fla. Apr. 23, 2008) (unpublished) (adopting report and recommendation to deny § 2254 petition challenging 30 days disciplinary

confinement without forfeiture of gain time because the plaintiff did not have a liberty interest under Sandin).

In applying the principles announced in Sandin, the Supreme Court held in Wilkinson v. Austin, 545 U.S. 209 (2005), that assignment to the state's "Supermax" maximum security prison with "highly restrictive conditions" represented the type of "atypical and significant hardship" that does give rise to a liberty interest. *Id.* at 213, 223.  "After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.' " Wilkinson, 545 U.S. at 223 (quoting Sandin, 515 U.S. at 484). Petitioner has failed to demonstrate that 60 days of disciplinary confinement was "atypical" or significantly restrictive compared to the conditions experienced in the general population.

Further, Petitioner cannot show that the disciplinary action caused him to forfeit gain time.  He is sentenced to life in prison and is ineligible to earn gain time.[7]  Petitioner's contention that he has a protected liberty

---

[7] Petitioner would be eligible to earn various forms of gain time if he had been sentenced to a term of years.  *See* §§ 944.275(2)(b), (3)(a), (4)(a) (1981); *see also* Waldrup v. Dugger, 562 So. 2d 687 (Fla. 1990).

Case No. 4:14cv518-MW/CAS

interest because disciplinary action can affect the decision to set his

presumption parole release date is also without merit.  The effect of a

disciplinary report on Petitioner's future parole prospects is too speculative

to give rise to any constitutional claim.  *See* Sandin, 515 U.S. at 487 ("The

decision to release a prisoner rests on a myriad of considerations.  And, the

prisoner is afforded procedural protection at his parole hearing in order to

explain the circumstances behind his misconduct record. . . . The chance

that a finding of misconduct will alter the balance is simply too attenuated to

invoke the procedural guarantees of the Due Process Clause.").  The

Florida Commission on Offender Review has discretion to give such weight

as it might deem necessary, or no weight, to Petitioner's disciplinary report.

Moreover, there is no due process liberty interest in parole in Florida.

Damiano v. Florida Parole and Prob. Comm'n, 785 F.2d 929, 932 (11th Cir.

1986).  *See also* Hunter v. Fla. Parole & Prob. Comm'n, 674 F.2d 847, 848

(11th Cir. 1982) (reiterating that there is no constitutional right to release

before the expiration of a valid sentence and that no liberty interest in

parole was created by the Florida Statutes); Staton v. Wainwright, 665 F.2d

686, 688 (5th Cir. Unit B 1982)[8] (explaining that Florida statutes create no

---

[8] The Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions issued prior to October 1, 1981, and all former Fifth Circuit Unit B decisions issued after

liberty interest in parole); Walker v. Fla. Parole Comm'n, 299 F. App'x 900, 902 (11th Cir. 2008) (unpublished) (holding there is no liberty interest in the calculation of a presumptive parole release date); Williams v. Tucker, 87 So. 3d 1270, 1271 (Fla. 1st DCA 2012) (citing Sandin and holding that a parole-eligible life sentenced inmate who served 60 days in disciplinary confinement lacked the requisite liberty interest to challenge a disciplinary report).

Nor does Petitioner's contention that impropriety occurred in the disciplinary procedure create a due process violation subject to habeas review by this Court.  He contends that the statement of facts upon which the discipline was imposed was faulty because the complaining officer did not specifically identify herself in the text of the statement, and that she misspelled the word "right" when referring to which hand Petitioner was using to perform the lewd and lascivious act.  He also contends that he requested but was denied an investigation into additional witnesses and evidence.  This request, even if denied, does not demonstrate a violation of due process subject to habeas review under the facts of this case.

---

October 1, 1981. *See* Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc); Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982).

Case No. 4:14cv518-MW/CAS

Prisoners subject to disciplinary proceedings in the prison system are not entitled to the same rights as other citizens.  Wolff v. McDonnell, 418 U.S. 539, 560 (1974).  "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Id.* at 556.  Where, however, a liberty interest is present and at risk of loss, certain minimum procedural due process must be accorded—advance written notice of the charges at least 24 hours prior to appearance before the disciplinary personnel and a written statement of the reasons and evidence relied upon.  *Id.* at 564-65.  Due process also requires that the inmate be permitted to present witnesses and documentary evidence at the disciplinary hearing.  *Id.* at 566.

The Supreme Court in Sandin explained that the due process protections afforded by Wolff only apply where an inmate is faced with the deprivation of a protected liberty interest.  *See* Sandin, 515 U.S. at 487.  In prison disciplinary proceedings that may result in "serious sanctions," the prisoner "would normally be entitled to present witnesses and relevant documentary evidence."  Wolff, 418 U.S. at 566.  Inmates have a qualified right to present witnesses and relevant documentary evidence "when permitting him to do so will not be unduly hazardous to the institutional safety or correctional goals.  *Id.*  Petitioner has not shown that he was

deprived of a protected liberty or property interest in this case.  Thus, he has not been deprived of any rights under The Due Process Clause.

Even though Petitioner was not subject to "serious sanctions" in this case and has not shown deprivation of a protected liberty interest, the disciplinary report provided him with "advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken."  Wolff, 418 U.S. at 565-65.  The alleged errors in the statement of facts did not deprive Petitioner of a protected liberty interest or any due process right which is subject to federal habeas review.

C. Merits

Notwithstanding the question of mootness and lack of a cognizable constitutional claim, Ground 1 lacks merits. The petition filed in this Court does not articulate in what way the institution failed to follow its own rules, but refers to "F.D.O.C Exhausted Grievance," without specification of which one of his several stated grievances is indicated.  ECF No. 8 at 6.  One of Petitioner's grievances set forth in the Request for Administrative Remedy or Appeal alleged that the institution failed to follow rules that would have required the reporting officer to identify herself as the witness and state her name in the body of the statement of facts.  See Ex. C at 1.  That grievance

also alleged that the disciplinary report was invalid because the officer, in referring to which hand was seen stroking his exposed penis, misspelled the word "right" as "richt."

At the time of the disciplinary report in this case, Rule 33-601.304, Florida Administrative Code, provided in pertinent part:

**33-601.304 Preparation of Disciplinary Reports.**

(1) Only one violation shall be included in each disciplinary report.  Separate disciplinary reports shall be used for multiple offenses.

(2) The statement of facts shall include:

(a) A description of the violation, including date, time and place;

(b) The specific rules violated;

(c) A formal statement of the charge;

(d) Any unusual inmate behavior;

(e) Any physical evidence and its disposition;

(f)  Any immediate action taken; and

(g) Any other specific facts necessary for an understanding of the charge.

Rule 33-601.304(1)-(2), F.A.C.  The rule does not require that the names of the staff who witnessed the incident be stated in the statement of facts. Even so, the statement of facts in this case did sufficiently identify the staff member who witnessed the lewd and lascivious conduct; and it met the other requirements of the rule.

The incident report was submitted by Officer T. Weatherspoon, whose name appears on the statement as the reporting officer. The statement of facts states in part: "On November 21, 2012, . . . [w]hile I was inside the officer's station, I observed inmate Gonzalez, Enrique DC# 186274, H3-212U, laying on his back on his bunk with his pants below his waistline and his richt hand stroking his exposed penis while staring directly at me." Ex. B at 1. Officer Weatherspoon also stated, "The shift supervisor was notified" and authorized the charge. Ex. B at 1. The statement indicates that Petitioner was placed in administrative confinement pending disposition and referred to mental health. Ex. B at 1. These references to the writer of the statement, in the first person, as having observed his conduct placed Petitioner on notice of who witnessed the conduct at issue. The statement of facts also placed Petitioner on notice of the description of the violation; Petitioner's unusual conduct; the date, time and place of the conduct; the rule violated; and the immediate action taken. Petitioner is therefore incorrect that the statement of facts in the disciplinary report was faulty in regard to any of the requirements of Rule 33-601.304.

Petitioner also contends that the charge was faulty because the officer misspelled the word "right" in referring to which hand Petitioner used to stroke his penis. This scrivener's error is not grounds to find a violation

of due process.  The statement of facts would have been sufficient if it merely stated that Petitioner used "his hand" or "a hand" to stroke his exposed penis while looking directly at the officer.  The reference to which hand Petitioner was using during the incident is not pertinent or material to the disciplinary violation, and was not in the nature of "any other specific fact necessary for an understanding of the charge," as required in Rule 33-601.304(2)(g).  The spelling error did not mislead Petitioner or hamper his defense, which was that the officer misidentified him.

Petitioner further contended in one of his requests for administrative remedy or appeal that the statement of facts incorrectly indicated he was wearing "blue uniform pants" when, he alleged, he was actually wearing "dark gym shorts."  He contends, without citation to any authority, that the exact description of his clothing was an essential element in the statement of facts necessary to properly charge the disciplinary violation.  Officer Weatherspoon's statement of facts refers only to "pants below his waistline."  Ex. B at 1.  Rule 33-601.304 does not require a specific statement of the color or style of the pants the inmate was wearing at the time of the incident; and the color or style of pants Petitioner was wearing were not essential to proof of the lewd and lascivious conduct.  No

deprivation of due process has been shown by failing to state that petitioner was wearing shorts or that they were gray in color.

Finally, Petitioner contends that he was not guilty of the charge and that errors in the statement of facts supports this claim.  "Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel."  O'Bryant v. Finch, 637 F.3d 1207, 1215 (11th Cir. 2011).  "To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance."  *Id.* at 1216.  The written statement of officer Weatherspoon, Ex. B at 1, constituted evidence before the disciplinary panel that supported the panel's decision, and the panel's factual findings are entitled to deference.

Where the disciplinary hearing may result in the loss of a liberty interest, the evidentiary requirements of due process are satisfied if "some evidence" supports the decision by the prison disciplinary board. Superintendent, Massachusetts Correctional Institution at Walpole v. Hill, 472 U.S. 445, 455 (1985); *see also* Edwards v. Balisok, 420 U.S. 641, 648 (1997).  Ascertaining if this standard was met does not require examination

of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence—the relevant question is whether there was any evidence to support the disciplinary board's conclusion.  Hill, 472 U.S. at 455-56.  Fundamental fairness does not require the courts to set aside decisions of prison administrators that have some basis in fact.  *Id.* at 456. The record demonstrates that Petitioner was not deprived of any protected liberty or property interest, and that the fact-finder's conclusion was neither arbitrary nor capricious.  There was "some evidence" to support the finding of guilt and disciplinary confinement.

Regardless of the mootness of this claim and the absence of a constitutionally protected liberty interest, the claim is without merit and should be denied.  Petitioner has failed to demonstrate pursuant to 28 U.S.C. § 2254 that the state court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court or was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  For all these reasons, Ground 1 should be denied.

## Ground 2: Failure to Obtain and Investigate Other Evidence

Petitioner next contends that his right to due process was violated by Respondent's failure to investigate the incident or obtain video or additional witness statements.  ECF Nos. 8 and 8-9.  As fully discussed in Ground 1, Petitioner's claim is moot and does not present an issue of deprivation of a constitutionally protected liberty interest.  Because Petitioner suffered no deprivation or adverse effect on a protected liberty interest, he was not entitled to the qualified due process rights discussed in Wolff and Sandin.  *See, e.g.,* Wolff, 418 U.S. at 565-66.  Notwithstanding mootness and lack of a protected liberty interest, this claim is meritless.

Petitioner was provided notice of the disciplinary charge and the witness to the charged conduct on November 20, 2012.  Ex. B at 1.  He was provided notice of his right to list and present his own witnesses and evidence.  Ex. B at 5.  He was provided a hearing on November 27, 2012, at which he could present evidence; and he was given a statement of the evidence relied on by the disciplinary hearing panel in finding him guilty.  Ex. B at 13.

The procedure prior to the hearing, as shown in the disciplinary report, demonstrates that Rule 33-601.305, governing inmate discipline

investigations, was followed.[9]  *See* Ex. B at 3-12.  The Disciplinary

Investigative Report indicated that the charging staff member was

interviewed and "stated the statement of facts are true and correct as

written."  Ex. B at 3.  The rule calls for the investigating officers to review

any evidence identified by the inmate.  Rule 33-601.305(4), F.A.C.

Petitioner had the opportunity to present his defense to the charges,

including by written statement, which he provided in the investigative

report.  Ex. B at 4.  The investigative report also included three statements

by witnesses listed by Petitioner, which were available for consideration by

the hearing panel.  Ex. B at 5-8.  The investigative report in this case also

provides a page on which the inmate may list any other evidence or

indicate that he has no evidence.  On that page, which was signed by

Petitioner, the box stating, "I do not have evidence" is checked.  Ex. B

at 11.

 In his grievance proceeding and administrative appeal, the

Secretary's response on February 6, 2013, found that Petitioner did not

request any additional witnesses or evidence during the hearing, Ex. C at

---

[9] Investigative actions called for in the rule include interviewing the charging staff member; interviewing the inmate; delivering a copy of the charge; appointing a staff assistant if necessary; obtaining inmate's version of events; requesting information as to inmate's witnesses or evidence; and reviewing any evidence identified by the inmate. *See* Rule 33-601.305(1)-(4), F.A.C.

8, and the record does not show that Petitioner requested additional evidence or witnesses prior to the hearing.[10]  The state circuit court dismissed his mandamus petition, and the state district court of appeal denied review on the merits.  Even if Petitioner could show a protected liberty interest calling for due process protection, the record does not demonstrate that he was denied due process in the disciplinary hearing or administrative appeal.  The charging document met the requirements of the rule.  Petitioner was provided the opportunity to present evidence and witnesses.  Moreover, the record demonstrates that the fact-finder's conclusion was neither arbitrary nor capricious and was based on "some evidence" to support the finding of guilt and disciplinary confinement.

Petitioner has failed to demonstrate pursuant to 28 U.S.C. § 2254 that the state court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court or was an

---

[10] Petitioner alleged in his administrative appeal submitted December 7, 2012, that he requested additional witnesses and evidence "at the Team Hearing."  Ex. C at 5.  He also stated that the request for witnesses was not repetitive because it "was not requested in investigative stage."  Ex. C at 5.  Subsequently, in his petition for writ of mandamus filed in the circuit court, Petitioner alleged that he asked for additional witnesses and evidence when he was in confinement awaiting the disciplinary hearing. Ex. D at 3, 7.  This latter conflicting allegation was not part of Petitioner's requests for administrative remedy or appeal.  Thus, the disciplinary hearing panel was not provided the opportunity to rule on the claim that he asked for additional witnesses or evidence prior to the hearing.

unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Therefore, Ground 2 should be denied.

## Conclusion

Based on the foregoing, Petitioner Enrique L. Gonzalez is not entitled to federal habeas relief.  Accordingly, the amended § 2254 petition (ECF No. 8) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether

a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the amended § 2254 petition (ECF No. 8). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on January 30, 2017.


**S/ Charles A. Stampelos___**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections**

within fourteen (14) days after being served with a copy thereof.  Fed.
R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the</u>
<u>electronic docket is for the Court's internal use only and does not</u>
<u>control</u>.  If a party fails to object to the magistrate judge's findings or
recommendations as to any particular claim or issue contained in a
Report and Recommendation, that party waives the right to challenge
on appeal the district court's order based on the unobjected-to factual
and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.